**UNITED STATES of America, Plaintiff,**

**v.**

**INTERNATIONAL BUSINESS MACHINES CORPORATION, Defendant.**

**No. 69 Civ. 200 (DNE).**

United States District Court, S. D. New York.

May 28, 1976.

U. S. Dept. of Justice, Antitrust Div., for plaintiff U. S.

Cravath, Swaine & Moore, New York City, for defendant IBM.

## MEMORANDUM

EDELSTEIN, Chief Judge:

Shortly after defendant International Business Machines Corporation [hereinafter referred to as IBM] brought to the court's attention the use by counsel for plaintiff United States of agents of the Federal Bureau of Investigation to conduct interviews of IBM's trial witnesses, the government moved this court, on May 6, 1976, for an order confirming the use of FBI agents in this civil antitrust litigation. Without reaching the merits, the court denied that motion on May 10, 1976. IBM subsequently applied to the court for an order to show cause why plaintiff should not be prohibited from using FBI agents to interview IBM

witnesses or, in the alternative, why a protective order imposing certain safeguards should not issue. IBM additionally requested a stay of plaintiff's use of the FBI pending a determination on the merits of the issues it raised. By stipulation and order dated May 13, 1976[1] plaintiff consented to refrain from any use of the FBI related to the interviewing of IBM witnesses until June 2, 1976 or the entry of a decision by this court, whichever occurs first.

At the time the stipulation and order was entered, the government had already begun to employ FBI agents to conduct interviews of IBM trial witnesses. It is the government's present intention to use the FBI to interview 131 of the 400 trial witnesses currently designated by defendant; additional interviews will be conducted by the government's trial staff. The agents have been provided with background information and detailed instructions by government counsel and were told to which member of the government's trial staff they should address requests for additional information.

Counsel's right to interview an adverse party's witnesses, a right acknowledged by this court, Tr. May 12, 1975 at 71, was recently confirmed by the Court of Appeals for the Second Circuit in *International Business Machines Corp. v. Edelstein*, 526 F.2d 37 (2d Cir. 1975), a decision arising from a petition by IBM for a writ of mandamus relating in part to an order of this court containing certain requirements with respect to witness interviews. That order, a significant aspect of which was the direct result of a suggestion by IBM, see Tr. of May 12, 1975 at 71, was entered during a pretrial discussion concerning allegations by the Department of Justice that IBM was harassing plaintiff's witnesses. *Id.* In a reversal of its position, IBM subsequently sought to have this court vacate its order. Notwithstanding that this court had not yet addressed the merits of that request,[2] IBM

---

1. That stipulation and order also had the effect of converting IBM's application for an order to show cause which the court did not sign into an ordinary notice motion.

2. Up to that time this court had ruled only on the procedural posture of defendant's applications.

successfully petitioned the court of appeals to direct such a vacation. The circuit court confirmed the "time-honored and decision-honored" principle "that counsel for all parties have a right to interview an adverse party's witnesses (the witness willing) in private, without the presence or consent of opposing counsel and without a transcript being made." *Id.* at 42. The purpose of such interviews, the court stated, is "to ascertain what, if any, information the witness may have relevant to his theory of the case, and to explore the witness' knowledge, memory and opinion—frequently in light of information counsel may have developed from other sources." *Id.* at 41.

IBM predicates its instant application on the grounds that (1) the FBI interviews are inherently coercive and abusive; (2) the FBI interview reports are unfair, secret weapons in the hands of government counsel; (3) use of the FBI fundamentally impairs IBM's ability to defend itself; and (4) use of the FBI violates the Publicity in Taking of Evidence Act since the interviews are "virtually depositions" and not interviews.

■ The second and fourth grounds can be considered together. Both the claim that reports taken by FBI agents are secret and unfair "weapons" and the claim that the FBI interviews are in essence depositions conducted in violation of the Publicity in Taking of Evidence Act, 15 U.S.C. § 30 (1970), are dependent upon IBM's assertion that the activities of the FBI at the direction of government counsel are not within the right of counsel "to interview an adverse party's witnesses (the witness willing) in private, without the presence or

consent of opposing counsel and without a transcript being made." *Id.* at 42. IBM claims that the "FBI campaign involves no legitimate interviewing at all" since the agents themselves "cannot possibly test the information elicited 'in light of information counsel may have developed from other sources' " [3] and since the agents cannot "explore the witness' knowledge, memory, and opinion" because, allegedly, they are given a "stock set of questions" and are unfamiliar with the computer industry. Moreover, IBM contends that the court of appeals' decision is limited to counsel and does not extend to agents of counsel.[4]

■ Regarding IBM's latter contention, the court does not accept IBM's limited reading of the Second Circuit's opinion. Further, cases developing the law of attorney's work product support attorneys' use of agents to conduct witness interviews.[5] Once having decided that the right to interview extends to interviews conducted through "agents" of counsel, IBM's remaining contention becomes frivolous. Even if it is true that agents of the FBI cannot test the information elicited against the other information developed by *counsel,* government counsel can test the information elicited when the agent's report is submitted to it. That the practice of using the FBI to conduct interviews may not be, in IBM's opinion, optimally effective or efficient does not mean that they are not interviews. Indeed, inefficient or ineffective interviews would appear to benefit IBM.

IBM also argues that the right to interview extends only to willing witnesses and that since use of the FBI is inherently coercive no true consent by IBM witnesses

---

**3.** IBM Memorandum of May 10, 1976 at 19.

**4.** *Id.* at 21. IBM does not object to interviews between Department of Justice lawyers, economists, or other paralegal personnel and consenting witnesses.

**5.** Cases which have recognized the use of FBI agents by government attorneys for the purpose of conducting witness interviews include: *Alltmont v. United States,* 177 F.2d 971 (3d Cir. 1949), *cert. denied,* 339 U.S. 967, 70 S.Ct. 999, 94 L.Ed. 1375 (1950); *United States v. American Optical Co.,* 37 F.R.D. 233 (E.D.Wis.1965);

*United States v. Aluminum Co. of America,* 34 F.R.D. 241 (E.D.Mo.1963); *United States v. Kelsey-Hayes Wheel Co.,* 15 F.R.D. 461 (E.D. Mich.1954). *Cf. United States v. Nobles,* 422 U.S. 225, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975) (where the Supreme Court recognizes that one of the realities of litigation is that "attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial." 422 U.S. at 238, 95 S.Ct. at 2170, 45 L.Ed.2d at 154). *See also* Fed.R.Civ.P. 26(b)(3).

is possible.[6] IBM's points in support of this argument are not persuasive. The presence of FBI agents in an interviewing context has not been shown by IBM to be inherently coercive. Its citation to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*[7] is of little weight, and particularly so in light of the Supreme Court's recent decision in *Beckwith v. United States*[8] which suggests strongly that a witness could validly consent to an FBI request for an interview. Whatever the validity of IBM's argument that the FBI has at times in the past abused its power in other circumstances, such an assertion can not support the proposition that it is inherently coercive.[9] IBM also claims that its witnesses fear retention in FBI files of the fact of their refusal to cooperate and grant an interview. Quite apart from the fact that the FBI does not retain such information in its files,[10] such speculation about a witness' apprehensions is insufficient support for the claim that no true consent by the witnesses is obtainable. Nor is adequate support lent by the fact that one FBI agent misinformed a witness that IBM knew of the FBI interviewing practice and may have, as defendant argues, stated or suggested that IBM approved of it. That misrepresentation was apparently a good faith error and an isolated occurrence. In any event, government counsel have taken steps to insure that such an incident is not repeated.[11]

 In sum, the court does not accept IBM's contention that interviews conducted by plaintiff's counsel through agents of the FBI are not in fact interviews and legitimate exercises of the right to interview an adverse party's witnesses. The arguments premised on that contention concerning whether the FBI interview reports are unfair, secret weapons and whether the FBI interviews are depositions conducted in violation of the Publicity in Taking of Evidence Act are similarly not persuasive.

 IBM's remaining arguments are framed in constitutional terms. IBM claims that the FBI interviewing procedure abridges its right to due process and its ability to defend itself because it is inherently abusive and coercive and may result, for example, in IBM witnesses asking to be withdrawn from the IBM witness list. As the government points out, IBM has standing to complain of FBI conduct only to the extent that the violation of its rights are at stake. IBM may not assert alleged violations of the rights of its witnesses,[12] and its first ground supporting this motion, that the FBI interviews are coercive, is not a proper one.[13] IBM's apprehension that it will lose trial witnesses and thereby be deprived of a fair opportunity to defend itself in this litigation—regardless of how speculative and unmeritorious that fear may be in fact—is, however, the assertion of an alleged injury to IBM and will be considered by this court.

IBM raises various reasons why its witnesses may wish to be dropped from its witness list. In addition to those considered and dismissed in the court's discussion of IBM's arguments concerning the impossibility of volitional consent by a witness to an FBI interview, IBM argues that the introduction of the FBI subjects IBM witnesses to the threat of perjury sanctions under

---

6. IBM Memorandum of May 10, 1976 at 12.

7. 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

8. —— U.S. ——, 96 S.Ct. 1612, 48 L.Ed.2d 1 (1976).

9. IBM points to *Paton v. La Prade,* 524 F.2d 862 (3d Cir. 1975) as an example of an unwarranted FBI investigation which would lead private citizens to find FBI investigations frightening and coercive.

10. Affidavit of Norman D. Middleton of May 17, 1976.

11. United States Memorandum of May 18, 1976 at 9.

12. *See, e. g., Alderman v. United States,* 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969); *Long v. United States,* 124 U.S.App.D.C. 14, 360 F.2d 829 (1966).

13. To the extent elements of IBM's first ground bear on other proper grounds, they are being considered.

section 1001 of Title 18 of the United States Code.

■ False statements made to agents of the Federal Bureau of Investigation may be subject to penalties under 18 U.S.C. § 1001 (1970). *United States v. Adler,* 380 F.2d 917 (2d Cir.), *cert. denied,* 389 U.S. 1006, 88 S.Ct. 561, 19 L.Ed.2d 602 (1967). Similarly, however, given the breadth of the statute's language and the broad reading given it by the Supreme Court, *United States v. Bramblett,* 348 U.S. 503, 75 S.Ct. 504, 99 L.Ed. 594 (1955); *United States v. Gilliland,* 312 U.S. 86, 61 S.Ct. 518, 85 L.Ed. 598 (1941), false statements made to other agents of the Department of Justice including Antitrust Division attorneys may be subject to the same penalties. *Accord, United States v. Chevoor,* 392 F.Supp. 436, 439 n. 3 (D.Mass.), *rev'd on other grounds,* 526 F.2d 178 (1st Cir. 1975). In light of IBM's concession that it is clearly permissible for Department of Justice attorneys to interview defendant's witnesses, recognition that the application of section 1001 embraces interviews conducted by both those attorneys as well as FBI agents disposes of this argument.[14]

Beyond these claims already considered by the court, defendant offers nothing more than additional speculation and unreasonable inference. Defendant's papers do not meet the burden of persuading the court to enjoin further use of the FBI and possibly impair dramatically the government's attempt to implement effectively its right to interview defendant's witnesses.

■ As noted above, defendant has proposed that should the court decline to enjoin FBI interviews a protective order governing such interviews should be entered. In its response papers the government has proposed a set of "evenhanded" directives setting forth "ground rules" applicable to all witness interviews conducted by either party. After considering the parties' proposals, the court enters the following directive:

FIRST: Each party shall immediately advise each of its currently designated trial witnesses and, upon the designation of additional trial witnesses, advise each such additional witness the following:

1. You have been designated as a trial witness for [insert name of appropriate party] in *United States v. International Business Machines Corporation,* 69 Civ. 200 (S.D.N.Y.) (DNE). You are not under the control of the party designating you as a witness. This is true irrespective of whether the designating party is IBM or the United States.

2. You may be requested to consent to one or more interviews with attorneys for IBM, attorneys for the Government or the duly authorized representatives of either of them, including but not limited to agents of the Federal Bureau of Investigation, economists, technical representa-

---

14. Further, the circumstances under which the allegedly false statements might be made may govern invocation of the statute. Where defendants voluntarily appeared before three Treasury Department representatives for the purpose of an examination, accompanied by counsel and questioned under oath, conviction was affirmed. · *United States v. McCue,* 301 F.2d 452 (2d Cir.), *cert. denied,* 370 U.S. 939, 82 S.Ct. 1586, 8 L.Ed.2d 808 (1962), *motion for leave to file a petition for rehearing denied,* 374 U.S. 858, 83 S.Ct. 1860, 10 L.Ed.2d 1083 (1963).

However, in *United States v. Ehrlichman,* 379 F.Supp. 291 (D.D.C.1974) the court ruled that congress did not intend section 1001 to apply to "statements given to the F.B.I. voluntarily and without oath or verbatim transcription during an interview initiated by the Bureau in the course · of a criminal investigation." 379

F.Supp. at 291–92. The court noted that the interview giving rise to the offense could occur under extremely informal circumstances insufficient to alert the interviewee to the danger that false statements could lead to a felony conviction. He might, as Ehrlichman was, then be forced to prepare a defense based upon the agent's notes which do not purport to be a verbatim record of either the questions or answers.

The interviews in question, whether conducted by Antitrust Division attorneys or by agents of the FBI designated by plaintiff's counsel, are not conducted under oath, are voluntarily acceded to, and no verbatim transcription is made by the interviewer. Under these circumstances, it is questionable whether the reports of these interviews would form the basis of a conviction under 18 U.S.C. § 1001.

tives or paralegals working under the direction and guidance of lawyers representing parties to this litigation. Such interviews outside the presence of opposing counsel are neither unusual nor improper if you are willing to consent to such an interview.

3. Should you receive a request for an interview, you should be aware that whether or not you consent to be interviewed is your decision to make. Such interviews are entirely voluntary. You are also free to impose conditions upon any interview you might give. If you have any questions concerning granting or refusing to grant an interview, you are entirely free to consult any person including your own attorney or the attorneys for either party.

4. If you believe that the conduct of any person either in arranging or conducting an interview constitutes a threat or is coercive or intimidating, you may immediately terminate the contact with that person and report the occurrence of such event to your counsel or counsel for the party that designated you as a witness.

SECOND: Whenever counsel for the adverse party or one of its agents contacts a trial witness designated by the opposing party to arrange or to attempt to arrange an interview, such counsel or agent shall upon such contact identify his/her relationship with the party on whose behalf the interview is sought (*e.g.*, counsel, FBI agent, economist or paralegal).

So ordered.