**Murray D. SCHWARTZ, Plaintiff,**

v.

**MARKETING PUBLISHING COMPANY and Ralph Ingersoll, II, Defendants.**

**Civ. No. 2:92CV230(AHN).**

United States District Court, D. Connecticut.

Jan. 21, 1994.

---

Jonathan M. Wagner, Kramer, Levin, Nessen, Kamin & Frankel, New York City, for plaintiff.

Gerald J. Ferguson, Thacher, Proffitt & Wood, New York City, for defendants.

SMITH, United States Magistrate Judge.

### DISCOVERY RULING

The plaintiff in this action alleges that the defendants breached a 1990 agreement to buy plaintiff's shares of defendant Marketing Publishing Company ("Marketing"). Plaintiff also contends that defendant Ingersoll is personally liable to him under this buyout agreement because, among other things, Marketing was rendered insolvent by fraudulent transfers of its assets by Ingersoll, its principal shareholder. Now pending before the court are plaintiff's motion to compel production of documents and defendants' motion to compel production of plaintiff's 1990 and 1991 tax returns and schedules.

I. *Plaintiff's Motion to Compel*

Plaintiff identifies a number of documents which he claims defendants have failed to produce. Through negotiations, the parties have narrowed their dispute so that the documents fall into three categories: (1) management agreements between the defendants and others; (2) documents relating to fees due Marketing from the Irish Press; and (3) documents relating to the defendants' sale of

their British and Irish newspaper holdings. Plaintiff asserts that these documents are relevant because they bear on either the existence and nature of the contract between the parties or on the issue of fraudulent transfer.

Defendants wisely do not attempt to counter the plaintiff's relevancy argument.[1] Rather, with respect to the first two categories of documents, defendants instead assert that the documents were never requested in accordance with Fed.R.Civ.P. 34.[2] The parties do, however, agree that these documents were requested orally at a deposition held on August 18 and, again, in a letter from plaintiff's counsel dated September 8. Defendants nevertheless describe this letter as "nothing more than a confirmation of oral requests made at a deposition." (Def.Mem. in Opposition at 8).

Despite defendants' challenge to the efficacy of plaintiff's September 8th letter, the plaintiff wrote to the court on November 18, 1993. This time, in lieu of a reply brief and without the court's leave, plaintiff transmitted to the undersigned a seven-page letter fortified with footnotes, case citations, point headings, and even exhibits.

The court understands plaintiff's desire to "get in the last word." It is not the better practice, however, to utilize letters in place of formal document requests, or as a substitute for filing a properly prepared, correctly certified memorandum with the Clerk of the Court as is contemplated by Rules 5, 7 and 10 of the Federal Rules of Civil Procedure. Though the widespread practice of sending letters directly to the judge undoubtedly is based on a desire to get information before the court speedily, expediency provides an inadequate justification for mailing a letter rather than filing a traditional legal memorandum.

Documents which have been filed with the Clerk of the Court but which await distribution to a judge are often said to be "in the pipeline." It is here that documents are file stamped, docketed, and made ready for delivery to a judge's chambers. Because of the clerical work that is performed, there is often some delay between the filing of a document and its actual receipt in chambers. Occasionally, the desire to avoid this delay will be cited as the reason for counsel's dispatching letters directly to chambers. In reality, however, counsel could accomplish this very same objective by hand delivering or mailing the judge a copy of formal documents which have been filed, while simultaneously serving a copy in the same manner on all parties as contemplated by the Federal Rules.[3] See Fed.R.Civ.P. 5, 7, & 10.

The Federal Rules plainly contemplate that documents which are intended to become a part of the record will ordinarily be filed with the Clerk of the Court, who then dockets and distributes them. Fed.R.Civ.P. 5(e).[4] While most of the Federal Rules are

---

1. It is well established that the Federal Rules of Civil Procedure allow parties broad discovery. *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351, 98 S.Ct. 2380, 2389, 57 L.Ed.2d 253 (1978). Rule 26(b)(1) authorizes discovery of "any matter, not privileged, which is relevant to the subject matter involved in the pending action," including information that would be inadmissible at trial so long as the information sought "appears reasonably calculated to lead to the discovery of admissible evidence." *Id.*

2. Rule 34 governs the production of documents or things. Rule 34(a) defines the scope of what a party may request, and Rule 34(b) governs the procedure that must be followed in making a request under the rule. Among the things which are required by the rule are reasonable particularity of description and reasonable specification of the time, place, and manner of an inspection. The rule allows the party on whom a request is served 30 days in which to respond in writing, stating either that inspection will be allowed as requested or that it is objected to. In the event it is objected to, the reasons for the objections must be stated. The rule explicitly refers to the right of a party to move under Rule 37 for enforcement of a Rule 34 request.

3. Indeed, the court appreciates such thoughtfulness. What distinguishes this practice from that of sending informal letters, or even letters accompanying copies of filed documents, is the simple fact that the rules have been complied with. While this may seem overly formalistic, the myriad problems that arise when parties stray from the rules and the minimum effort involved in compliance combine to militate in favor of strict compliance.

4. Rule 5(e) states:

   Filing with the Court Defined. The filing of papers with the court as required by these rules shall be made by filing them with the

cast in terms of service of pleadings,[5] the importance of the filing requirements can not be overstated.[6] As the Second Circuit observed, "[i]t is not the type of paper submitted but rather the fact of filing which determines whether a particular item will be included in the record." *International Business Machines Corp. v. Edelstein*, 526 F.2d 37, 45 (2d Cir.1975). The court also noted that "[f]iling at the trial court level with a view to 'making a record' is crucial because, absent extraordinary circumstances, federal appellate courts will not consider rulings or evidence which are not part of the trial record." *Id.* (citing cases). *See* Fed.R.App.P. 10(a). While a judge may permit the filing of papers directly with chambers, the rules do not provide for the direct filing of unsolicited papers, nor do the rules mandate that such papers be docketed or even retained by their addressee.

Though one might argue that a judge's receipt of mail, a letter brief for example, constitutes an implied grant of permission to file the document directly with the judge, the

argument unrealistically assumes that judges have control of the content of mail they receive. This reasoning is also unpersuasive in that it would permit constructive compliance with a rule that seems as a matter of common sense to call for the judge's actual permission.[7]

Dispatching a letter to a judge, rather than filing a formal legal document with the clerk, also may create uncertainty in the record, for Rule 5(e) vests the judge with discretion to decide which, if any, of the letters sent directly to chambers will be transmitted to the clerk for docketing.[8] Ordinarily, a judge will read a letter before deciding whether to have it docketed. A decision not to docket a letter, therefore, does not necessarily mean that the letter has gone unread. Such a decision reflects only that the judge has chosen not to include a particular communication in the record. The risk, of course, is that at some later date the communication might shape the court's "impression," or at least unconsciously affect the judge's perception of an issue.[9]

---

clerk of the court, except that the judge may permit the papers to be filed with the judge, in which event the judge shall note thereon the filing date and forthwith transmit them to the office of the clerk.

5. 2 J. Moore, *Federal Practice,* ¶ 5.10 at 5–37 (2d ed. 1993).

6. The requirements of both service and filing established by Rule 5 provides a system in which:
   (1) The parties are notified of the progress of the action without the necessity of examining the files in the clerk's office, (2) the files in the clerk's office contain a record of all proceedings taken and acts done in the action, and (3) technical objections based on the ground that a paper was not filed as well as served within a prescribed time are avoided.
   2 J. Moore, *supra,* ¶ 5.02.

7. *See, e.g., DeMarines v. KLM Royal Dutch Airlines,* 580 F.2d 1193, 1195 n. 4 (3d Cir.1978) (motion handed to judge's law clerk not filed with judge within the meaning of Rule 5 as "permission of the judge was neither sought nor given").

8. The Second Circuit has expressed reservations as to whether this practice is even permissible, except in emergency cases. In *Edelstein*, the Court of Appeals held that the language of Fed. R.Civ.P. 5(e) suggested that the practice of filing with a judge is proper "only when the Court's discretion has been invoked by one of the parties

for good cause." 526 F.2d at 46. *See* 2 J. Moore, *supra,* ¶ 5.11 at 5–47 (judge's authority under Rule 5(e) cannot be invoked sua sponte but must be pursuant to a request made by a party). Such good cause would be found appropriately when "[f]iling directly with the Court [is] necessary for the protection of the parties where, for example, the delay occasioned by first filing with the clerk will cause irreparable harm." *Id.* (citing *In re President & Directors of Georgetown College, Inc.,* 331 F.2d 1000, 1006–07 (D.C.Cir.), cert. denied, 377 U.S. 978, 84 S.Ct. 1883, 12 L.Ed.2d 746 (1964)). *Edelstein* is a unique case in which the judge had ordered all documents to be presented to the court with the court then determining which documents would be forwarded to the clerk for filing. The court condemned the refusal to file with the clerk the motions submitted to the court as an "impermissible interference with [a party's] right to make the record it chooses for purposes of appeal." *Edelstein,* 526 F.2d at 46.

9. Aside from this obvious difficulty, the adverse impact on the state of the record should also be clear. Rule 10(a) of the Federal Rules of Appellate Procedure reads:
   Composition of the Record on Appeal. The original papers and exhibits filed in the district court, the transcript of proceedings, if any, and a certified copy of the docket entries ... shall constitute the record on appeal in all cases.
   *See* 9 J. Moore, *supra,* ¶ 210.04 at 10–14 ("the term original papers refers ... to all papers

A judge might avoid this pitfall by noting the time and date that all mail is received and by further requiring that all mail be docketed by the clerk. But this is too much to expect from our overburdened courts. A far better solution is to require counsel to file traditional legal documents with the Clerk of the Court as existing rules contemplate. This is especially so when one considers that the treatment accorded to letters varies among judges, and inconsistency may exist even within a given judge's chambers.

Letters to the court also may run afoul of certification requirements. Rule 5(a), Fed. R.Civ.P., requires that written motions or similar papers be served on each of the parties. Where a party is represented by counsel, Rule 5(b) allows service to be made by mail upon the party's attorney. Rule 5(d), however, requires the filing of a certificate of service. As the Advisory Committee Notes to the 1991 Amendments to the rule indicate, the rule "require[s] that the person making service ... certify that service has been effective." [10] Normally, the certificate of service will specify the date and manner of service.

■ The notation "cc:," which commonly appears at the end of a letter, obviously does not comply with either the letter or the spirit of Rule 5. The notation probably is understood to mean that a copy has been transmitted to the person identified. Standing alone, however, the notation certifies absolutely nothing. Nor does the ambiguous "cc:" reveal either the date or the manner of transmission to the recipient. This plainly is not what Rule 5 requires. Rather, the rule contemplates a clear and unambiguous certification that a document was served in a particular way on a certain date. Anything short of this invites mischief.

One example of such mischief is the deliberate delaying of a letter's delivery to opposing counsel, while promptly delivering it to the judge. The Committee on Professional and Judicial Ethics of the Association of the Bar of the City of New York has noted that this may induce a tribunal to unwittingly act upon an improper communication. In a case involving a letter brief which was hand delivered to the decision-maker, which bore a "cc:" notation to opposing counsel but which was actually sent to opposing counsel by ordinary mail, the Committee made the following observation:

The Committee and others have consistently criticized and held improper *ex parte* submissions to tribunals. *See, e.g.,* N.Y. City 887 (1975); N.Y. State 420 (1975); N.Y. State 325 (1974). While the letter inquired of is not, in the strict sense, an *ex parte* communication, it nonetheless is capable of leading to the same evils. In N.Y. City 887, we found the submission of *ex parte* briefs to be improper because of "the danger that a first impression conveyed in an *ex parte* submission, however unfair or erroneous, may be decisive ..." Here, delivering a letter argument to a tribunal by hand while delaying its delivery to an adversary by sending it by mail could accomplish the same result. Because of the misleading failure to identify the method of delivery to opposing counsel, the tribunal may well conclude that the writer's adversary has simultaneous notice of the argument in the letter and has chosen to make no response, causing the judge unknowingly to violate Canon 3(A)(4) of the Code of Judicial Conduct by considering what is in effect an *ex parte* communication or otherwise creating the possibility of unfair influence by the "first impression" conveyed by the letter writer, contrary to N.Y. City 887.

presented to the district court and filed in the record and to all papers filed by the district court itself."). *See also In re Arthur Andersen & Co.,* 621 F.2d 37, 39 (1st Cir.1980) (citing Fed. R.Civ.P. 5(c) and expressing doubt whether proof of claim notices solicited in connection with settlement negotiations could be held to be case "records" since they were not filed with the district court). *Cf. Todd v. Nello L. Teer Co.,* 308 F.2d 397, 399 (5th Cir.1962) (holding a letter to judge from plaintiff's attorney as part of record because letter marked by judge as "filed").

**10.** The Advisory Committee states that "having such information on file may be useful for many purposes, including proof of service if an issue arises concerning the effectiveness of the service." *See generally* 2 J. Moore, *supra,* ¶¶ 5.09, 5.10.

Assoc. of the Bar of the City of New York Comm. on Professional Ethics, Formal Op. 1987-6.[11]

The Federal Rules of Civil Procedure are designed to enable a relatively small judiciary to deal in an orderly way with a virtually limitless number of disputes. Even when parties sedulously *comply* with the rules of procedure, courts must struggle to keep abreast of their ever-growing dockets. By pioneering their own ad hoc procedure, parties do themselves and the courts a disservice. It is far easier and quicker to make a formal document request pursuant to Rule 34 than it is to construct and articulate an argument why an *informal* letter should be *treated* as a Rule 34 request so as to enable it to be *enforced* under Rule 37. When parties fashion their own procedure, they remove their cases from the litigative stream and, when a dispute later arises, almost invariably consume more than their fair share of judicial time.

■ In this case, neither of the first two categories of documents were requested in plaintiff's First Request for Production of Documents. (*See* Plaintiff's Mem. in Support, Exhibit A). Since these documents were not requested pursuant to Fed.R Civ.P. 34, but in a highly informal, extra-procedural manner, Rule 37 does not by its terms apply.[12] Accordingly, plaintiff's motion to compel the production of these documents pursuant to Rule 37 is denied.

■ With respect to the third category of documents—those relating to the defendants' sale of their British and Irish newspaper holdings—the defendants have represented "that [they] possess no responsive

documents because no 'sale' as described in this document request has occurred." (Defendants' Mem. in Opposition at 7). While the defendants quite correctly observe that they have no obligation to produce documents that do not exist, 4A J. Moore, *supra,* ¶ 34–17, they have overlooked the requirement that the absence of possession, custody, and/or control of documents that have been requested pursuant to Fed.R.Civ.P. 34 must be sworn to by the responding party. *Norman v. Young,* 422 F.2d 470, 472–73 & n. 3 (10th Cir.1970); *In re Air Crash Disaster at Detroit Metro. Airport,* 130 F.R.D. 641, 646 (E.D.Mich.1989); *see North American Watch Corp. v. Princess Ermine Jewels,* 786 F.2d 1447, 1451 (9th Cir.1986). Defendants have not supplied such an attestation. Plaintiff's motion to compel production of these documents therefore is granted, and the defendant is ordered to produce the responsive documents pertaining to the alleged transaction, or, in a properly executed response, attest to their lack of possession, custody and/or control of such documents.

## II. *Defendants' Motion to Compel*

■ Defendants' have moved to compel plaintiff's production of unredacted copies of his 1990 and 1991 income tax returns.[13] Defendants' motion, as plaintiff points out, falls victim to the same procedural infirmity that contaminates portions of plaintiff's motion to compel; namely, defendants have failed to make a formal request for production of these documents in accordance with Fed. R.Civ.P. 34. In their reply memorandum, defendants assert that "[i]t is indisputable ... that Plaintiff's tax returns were formally

---

11. The court does not suggest that any misbehavior took place in this case. The example is used merely to indicate the potential for misadventure. Here, plaintiff's November 18th letter at most amounts to a reply brief submitted to the court without its permission. The substance of the letter nevertheless has been considered by the court in the resolution of the pending motions and has been found unpersuasive.

12. Rule 37(a)(2)(B) provides for the filing of a motion to compel compliance with a Rule 34 production request. Rule 37(a)(4) permits the court to award attorney's fees and costs to one who successfully moves under the rule. Rule 37(b) allows the imposition of more drastic sanc-

tions against one who disregards a court order entered under Rule 37(a). Thus, the entire enforcement mechanism of Rule 37 contemplates the parties having formally resorted to the underlying discovery rule, in this case Rule 34, rather than a casual, informal request contained in a letter.

13. Although plaintiff maintains that he has complied with a request to produce these documents since the filing of defendants' motion, defendants assert that they are not satisfied with the content of the still-redacted returns. (Def. Reply Mem. at 5–6).

requested in [the] document requests and ha[ve] been the subject of numerous attempts by Defendants' counsel to obtain their production." (Def.Reply Mem. at 2). While the latter portion of this assertion may well be true, the defendants have failed to identify where in the record they formally made such a Rule 34 request. *See* Local Rule 9(a) (D.Conn.).

Having objected to plaintiff's motion to compel due to the informality of the underlying discovery request, the defendants must accept the consequences of their own informality. Their motion, accordingly, is denied.

### III. *Attorney Fees*

Both parties have moved for attorneys fees in conjunction with their respective motions to compel. At the conclusion of all proceedings in this case, upon application, the court will consider the issue of attorneys fees and expenses in connection with these motions purportedly under Fed.R.Civ.P. 37.

### IV. *Conclusion*

For the foregoing reasons, plaintiff's Motion to Compel (filing 55) is GRANTED IN PART and DENIED IN PART, and defendants' Motion to Compel (filing 62) is DENIED. This is not a recommended ruling but a ruling on discovery, which is subject to a "clearly erroneous" standard of review upon a timely application to the district judge. *See* 28 U.S.C. § 636; Fed. R.Civ.P. 6(a), 6(e) & 72; and Rule 2 of the Local Rules for United States Magistrate Judges.