**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-2745
_____


CARL R. GREENE,
Appellant

v.

PHILADELPHIA HOUSING AUTHORITY;
MICHAEL P. KELLY; ESTELLE RICHMAN
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-11-mc-00060)
District Judge: Anita B. Brody
_____

Submitted Under Third Circuit LAR 34.1
April 20, 2012

Before:   VANASKIE, BARRY, and CUDAHY,[*] *Circuit Judges*

(Filed: June 7, 2012 )
_____

OPINION OF THE COURT
_____

VANASKIE, *Circuit Judge.*

---

[*] Honorable Richard D. Cudahy, United States Court of Appeals for the Seventh Circuit, sitting by designation.

Carl R. Greene, the former executive director of the Philadelphia Housing Authority ("PHA"), appeals the District Court's order denying his request for a temporary restraining order ("TRO") and preliminary injunction to prevent the PHA, Michael P. Kelly, and Estelle Richman (collectively, the "PHA Defendants") from releasing invoices for legal services to the United States Department of Housing and Urban Development ("HUD") for matters in which Greene was sued in his individual capacity and represented by counsel paid by the PHA. Greene contends that he has a valid claim of attorney-client privilege in the invoices, and that the District Court abused its discretion in authorizing the PHA to release the invoices based on the PHA Defendants' counsel's representation that the invoices contained no information subject to a claim of personal attorney-client privilege by Greene. We disagree that the District Court abused its discretion and will affirm.

I.

We write primarily for the parties, who are familiar with the facts and procedural history of this case. Accordingly, we set forth only those facts necessary to our analysis.

Carl Greene was the executive director of the PHA from 1998 until the fall of 2010, at which time the PHA terminated him for purported misconduct. While serving as the PHA's executive director, Greene was sued several times in his individual capacity for conduct related to his position at the PHA, and the PHA provided him with legal counsel.

Around 2010, HUD's Office of the Inspector General began investigating the PHA after receiving various reports that the PHA was spending excessive sums on outside

2

legal services.  Part of the investigation concerned whether Greene submitted bills for personal legal services for payment to the PHA.  On October 15, 2010, HUD requested information from the PHA about its contracts for legal services in 2005, and on December 10, 2010, HUD's Office of the Inspector General issued a subpoena *duces tecum* to the PHA, requesting that it produce invoices for legal services from six Philadelphia law firms from April 1, 2007 to August 31, 2010.

On March 4, 2011, the PHA and HUD entered into an agreement authorizing HUD "to act as the Board of Commissioners of [the] PHA and to administer all PHA programs." (A. 49.)  Shortly afterwards, HUD appointed Estelle Richman, HUD's chief operating officer, as the only member of the PHA's Board of Commissioners.  As the sole member of the PHA's Board of Commissioners, Richman ordered the PHA and Michael P. Kelly, PHA's interim executive director, to produce unredacted legal invoices in response to the HUD subpoena.[1]

On April 4, 2011, Greene filed a motion for a TRO and a preliminary injunction, seeking to prevent the PHA Defendants from releasing the unredacted legal invoices.  He argued before the District Court that releasing unredacted invoices risked waiving his attorney-client privilege in matters in which he had a personal attorney-client relationship.

---

[1] Whether the PHA still intends to produce unredacted legal invoices is unclear. On March 28, 2011, Helen Ferris, the PHA's acting general counsel, confirmed that the PHA intended to produce unredacted legal invoices in response to the HUD subpoena. Since then, however, the PHA Defendants' counsel has stated that the PHA Defendants redacted the invoices to safeguard against the disclosure of privileged information.

3

On April 28, 2011, the District Court allowed Greene to determine if any of the firms listed in the HUD subpoena had represented him in his individual capacity during the period covered by the HUD subpoena. Greene sent letters to five of the six law firms listed in the subpoena, requesting information about whether they had represented him personally.[2]

After Greene received responses from four of the law firms listed in the HUD subpoena, the District Court issued an opinion construing Greene's complaint as a motion to quash the HUD subpoena and holding that it had subject matter jurisdiction to consider quashing the HUD subpoena pursuant to the Inspector General Act's jurisdictional grant, 5 U.S.C. App. 3 § 6(a)(4). *See Greene v. Phila. Hous. Auth.*, 789 F. Supp. 2d 582, 586 & n.3 (E.D. Pa. 2011). The District Court then authorized the PHA Defendants to release invoices from firms that did not represent Greene in his individual capacity during the period covered by the HUD subpoena, and ordered the PHA Defendants' counsel to review the invoices from law firms that may have represented Greene in his individual capacity for purposes of identifying for the Court any invoices possibly containing privileged information. *Id.* at 587.

On June 17, 2011, the PHA Defendants' counsel filed an affidavit, attesting that his firm "did not uncover a single instance in which a legal billing entry raised a question as to whether an attorney-client privilege existed as to Carl Greene." (A. 300.) In particular, the affidavit states that "[o]f the hundreds of thousands of unredacted legal

---

[2] One of the six firms listed in the HUD subpoena dissolved prior to April 28, 2011.

billing entries reviewed, none reflected notes of meetings with counsel, legal analysis, or legal advice relating to Carl Greene, individually." (A. 299-300.) In response to the affidavit, the District Court issued an order denying Greene's request for immediate injunctive relief and authorizing the PHA to release all relevant legal invoices pursuant to the HUD subpoena. Greene now appeals the District Court's order.

II.

The District Court had subject matter jurisdiction under 5 U.S.C. App. 3 § 6(a)(4), and we have appellate jurisdiction under 28 U.S.C. § 1291.[3] We review the District Court's legal conclusions *de novo* and review the decision to deny a motion to quash an administrative subpoena for abuse of discretion. *See Wedgewood Vill. Pharmacy, Inc. v. United States*, 421 F.3d 263, 268 n.5 (3d Cir. 2005).

Greene contends on appeal that he may have established a personal attorney-client relationship in cases in which counsel provided by the PHA represented him in his individual capacity, and that he therefore may have a claim of attorney-client privilege in the legal invoices independent of the PHA's attorney-client privilege. Greene further argues that the District Court abused its discretion in relying on the PHA Defendants' counsel's affidavit regarding the invoices, asserting that the District Court should have

---

[3] As explained in Section I *supra*, the District Court construed Greene's complaint as seeking, in relevant part, to quash the HUD subpoena. *See Greene v. Phila. Hous. Auth.*, 789 F. Supp. 2d 582, 586 (E.D. Pa. 2011). Because district courts have jurisdiction to enforce HUD subpoenas under 5 U.S.C. App. 3 § 6(a)(4), the District Court reasoned that it had jurisdiction to consider quashing the HUD subpoena. *Id.* We agree that the District Court had subject matter jurisdiction to consider quashing the HUD subpoena.

5

instead undertaken an *in camera* review of the invoices or afforded him an opportunity to verify the PHA Defendants' counsel's representations.

The PHA Defendants respond that Greene has no valid attorney-client privilege claim in the invoices because he did not establish a personal attorney-client relationship with counsel provided by the PHA, and that even if he did, he waived his privilege by submitting the invoices to the PHA for payment. Alternatively, the PHA Defendants contend that the District Court properly exercised its discretion in relying on their counsel's affidavit. We agree that the District Court properly exercised its discretion in relying on the PHA Defendants' counsel's affidavit, and therefore need not address whether Greene may have established a personal attorney-client relationship with any counsel provided by the PHA.[4]

A district court has broad discretion in fashioning a process that enables a fair adjudication of a challenge to a subpoena while maintaining control of its docket and making efficient use of its scarce resources. *See In re Fine Paper Antitrust Litig.*, 685 F.2d 810, 817 (3d Cir. 1982) ("[M]atters of docket control and conduct of discovery are committed to the sound discretion of the district court."). In this regard, district courts may permit "discovery, *in camera* inspection, additional affidavits and a hearing." *In re Grand Jury Empaneling of the Special Grand Jury,* 171 F.3d 826, 834 (3d Cir. 1999) (quoting *In re Grand Jury Proceedings,* 507 F.2d 963, 965 (3d Cir. 1975)).

---

[4] We note in passing that it is extremely unlikely that Greene could establish such a relationship under the five-factor test set out in *In re Bevill, Bresler & Schulman Asset Management Corp.*, 805 F. 2d 120, 123 (3d Cir. 1986).

6

The parties agreed to the procedure for review of the invoices established by the District Court's May 11, 2011 order. We find no abuse of discretion in the District Court's reliance upon the outcome of the procedure to which Greene had assented. The District Court afforded Greene the opportunity to explain his claim of privilege and to contest enforcement of the HUD subpoena. Although Greene never pointed to any particular matter in which he believed he had a claim of personal privilege, the District Court nonetheless developed a process by which the invoices regarding matters in which Greene was, or may have been, sued in his individual capacity were reviewed for purposes of identifying any invoices to which the privilege may have attached. The District Court authorized the PHA Defendants to release the legal invoices to HUD only because their counsel determined that none of the entries "reflected notes of meetings with counsel, legal analysis, or legal advice relating to Carl Greene, individually." (A. 299-300.)

Greene's argument that the District Court abused its discretion in permitting only the PHA Defendants' counsel to review the invoices is without merit. A district court abuses its discretion in fashioning an appropriate process only if it deprives a party of the opportunity "'to obtain crucial evidence,'" *In re Fine Paper Antitrust Litig.*, 685 F.2d at 818 (quoting *Eli Lilly & Co. v. Generix Drug Sales, Inc.*, 460 F.2d 1096, 1105 (5th Cir. 1972)), "interfere[s] with a substantial right," or commits "a gross abuse of discretion resulting in fundamental unfairness." *Marroquin-Manriquez v. Immigration & Naturalization Serv.*, 699 F.2d 129, 134 (3d Cir. 1983) (citations and quotation marks omitted). The District Court, in ordering the PHA Defendants' counsel to review the

7

records, did not prevent Greene from gathering evidence in support of his privilege claims. Greene could have requested that the law firms he says represented him in his individual capacity produce for his review invoices for services rendered to him in his individual capacity. Greene evidently did not make such requests to bolster his claim in this litigation. Indeed, Greene's assertion of possible privileged material included in the law firm invoices is based entirely on speculation. The process invoked by the District Court tested this speculation, and it was shown to be unfounded.

Furthermore, the District Court had no duty to undertake a laborious *in camera* review of the thousands of entries in the law firm invoices. *In camera* review is just one of several methods that district courts have at their disposal in deciding whether to enforce subpoenas, rather than a mandatory procedure for resolving all discovery disputes. *See, e.g.*, *In re Grand Jury Empaneling of the Special Grand Jury*, 171 F.3d at 834 (discussing *in camera* review as one of several possible methods for determining whether to enforce a subpoena). The District Court in this case properly could require the legal custodian of the documents, the entity to which the invoices were sent for payment, to screen the mass of material to cull out potentially protected documents. In this case, the process employed by the capable District Judge obviated the need for *in camera* review, thereby avoiding the unnecessary expenditure of scarce judicial resources.

Moreover, although Greene contends that the District Court abused its discretion because it permitted review only by "parties with interests adverse to Mr. Greene's," we rely constantly on parties with adverse interests to be honest in responding to discovery requests. (Appellant's Br. at 19.) Whenever a party requests the production of

8

documents under Fed. R. Civ. P. 34(a), and the recipient of the request states that it does not have any responsive documents, we trust, at least in the absence of contrary information, that the recipient is responding truthfully. *See, e.g.*, *Schwartz v. Mktg. Publ'g Co.*, 153 F.R.D. 16, 21 (D. Conn. 1994) (explaining that parties may comply with Fed. R. Civ. P. 34 by submitting a sworn response that the requested documents do not exist). The instant scenario, wherein the PHA Defendants have asserted that the invoices contain no information subject to a possible claim of personal attorney-client privilege, is no different. Indeed, in this case, any adversity of interest is tempered by the responsibility of the PHA Defendants' counsel as an officer of the court.

Finally, the judicially-compelled disclosure of information, later determined to be privileged, may not result in a waiver of the privilege. *See* Fed. R. Evid. 502(b). In this respect, nothing prevents Greene from requesting that the District Court enter an order pursuant to Fed. R. Evid. 502(d) to the effect that the compelled disclosure does not constitute a waiver of privilege.[5]

### III.

---

[5] Greene also suggests that the District Court abused its discretion in relying on the PHA Defendants' counsel's affidavit because the affidavit reflects a "legal opinion" that the invoices are not privileged, rather than factual information about the invoices. (Appellant's Br. at 19.) Greene ignores, however, that the affidavit contains the factual basis for the PHA Defendants' counsel's conclusion regarding privilege. Specifically, the affidavit states that none of the entries concern "notes of meetings with counsel, legal analysis, or legal advice relating to Carl Greene, individually." (A. 299-300.) Because Greene makes no argument that the PHA Defendants' factual assertions reflect a mistaken understanding of the definition of the attorney-client privilege, we disagree that the District Court abused its discretion in relying on the information in the affidavit.

In summary, we find no abuse of discretion in the District Court's denial of Greene's request for a temporary restraining order and a preliminary injunction. Accordingly, we will affirm.